**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| DAN ROADHOUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | )  2:09-cv-00033-JCM-LRL |
| v. | ) |
| | )  **O R D E R** |
| LAS VEGAS METROPOLITAN | ) |
| POLICE DEPARTMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Before the court is plaintiff's Motion to Compel (#87). Defendant filed an Opposition (#94) and plaintiff a Reply (#84).[1] Plaintiff further filed a Motion (#116) for Hearing on Motion to Compel (#87). The court held a hearing on the motion (#87) on May 10, 2010. There the parties agreed that the only remaining issue in dispute with regard to the motion to compel (#87) is whether three memoranda withheld by defendant as privileged and/or protected are withheld properly. At the hearing, the court invited further briefing on the issue. Accordingly, also before the court are defendant's Brief (#135) and plaintiff's Response (#138).

Plaintiff filed this § 1983 class action on January 6, 2009, alleging that the Las Vegas Metropolitan Police Department ("LVMPD")'s strip search policy violates the Fourth Amendment and Article I, § 18 of the Nevada Constitution. *See* Amended Complaint (#126). The instant matter concerns whether three memoranda, authored by LVMPD officers, and otherwise responsive to plaintiff's request for production of documents, are entitled to protection under the work product doctrine and/or the "self-critical analysis/governmental deliberative analysis" privilege. The three memoranda are described in defendant's March 2, 2010, privilege log as follows: (1) LVMPD memorandum, dated April 27, 2009,

---

[1] Pursuant to the court's Order (#147) on defendants' Motion to Dismiss (#130), LVMPD is the only remaining defendant to this action.

entitled "Strip Search Policy," sent from Sgt. Jessica Farside to Lt. Gary Driscoll and through Lt. Richard Suey; (2) LVMPD memorandum, dated May 6, 2009, entitled "9th Circuit Court findings in Bull v. City and County of San Francisco," sent from Lt. Gary Driscoll to Chief Kirkegard and through Cpt.s Rogan, Holt, Donahue, Peck, and See; and (3) LVMPD memorandum, dated July 15, 2009, entitled "Changes and Clarifications to Strip Search Policy," sent from Sgt. Farside to Chief Kirkegard and through Cpt.s See, Peck, Holt, Rogan and Donahue, and Lt.s Suey and Driscoll. Exh. A to Brief (#135). All three documents have been provided to the court for *in camera* review. Each memorandum relates to LVMPD's strip search policy and procedure and/or the Ninth Circuit's August 22, 2008 decision in *Bull v. City and County of San Francisco*, 539 F.3d 1193 (9th Cir. 2008) (vacated by rehearing en banc, substituted opinion at *Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010)). Also submitted for *in camera* review are affidavits of defendant's litigation counsel, Thomas D. Dillard, and in-house counsel, Martina Geinzer.

        Defendant argues that all three memoranda are entitled to protection as work product, inasmuch as they "include information bearing upon application of advice of counsel to facts developed through an investigation – undertaken as a direct result of this instant litigation." Brief (#135) at 8. In the alternative, defendant maintains that the documents are protected from discovery under a "self-critical analysis/governmental deliberative process" privilege because the memoranda reflect government analysis and deliberation concerning changes to its policies and procedures. *Id.* at 9. Plaintiff argues: (1) the work product privilege does not apply to the memoranda because they are not attorney work product; (2) the self-critical analysis privilege is not recognized by the Ninth Circuit; (3) defendant's privilege log is too deficient to even invoke a privilege; and (4) any privilege is waived because defendants waited too long – ten months – to assert it and because defendants have produced numerous documents that relate to proposed changes to the SOP at issue. *See* Opp'n (#138) *passim*. Additionally, plaintiff maintains that even if the court were to find that a protection or privilege applies to any or all of the documents, the documents would still have to be produced pursuant to Rule 26(b)(3)(A), because plaintiff has a "substantial need" for the documents. *Id.* at 8.

**DISCUSSION**

As a preliminary matter, defendant's claim of a "self-critical analysis" privilege must be rejected. Where, as here, a federal question case asserts pendant state law claims, the federal law of privilege applies to the entire case. *See Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 650 (N.D. Cal. 2005) (citations omitted); *see also Reichhold Chems., Inc. v. Textron, Inc.*, 157 F.R.D. 522, 528 (N.D. Fla. 1994) (stating that, in federal question case with pendent state law claims, federal law of privilege governs entire case); *6-26 Moore's Federal Practice – Civil* § 26.47 ("In federal question cases . . . in which state law claims are also raised . . ., any asserted privileges relating to evidence relevant to both state and federal claims are governed by federal common law."). The Ninth Circuit does not recognize the "self-critical analysis" privilege. *See, e.g., Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000) ("UP's assertion of a self-critical analysis privilege is particularly questionable. This court has not recognized this novel privilege.") (citing *Dowling v. American Haw. Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992); *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 437 (N.D. Cal. 2010) ("Defendant's reliance on the self-critical analysis privilege is improper because that privilege has not been recognized by the Ninth Circuit.").

Further, while defendant combines the self-critical analysis and "governmental deliberative" privilege in its Brief (#135), these privileges, though perhaps similar, are not the same. In any event, the governmental deliberative privilege, also known as the "executive deliberative process privilege," most commonly arises in Freedom of Information Act ("FOIA") cases because FOIA specifically preserves such a privilege as "Exemption 5." *See* 5 U.S.C. § 552(b)(5). As explained in a case cited by defendant, the "privilege 'shields from mandatory disclosure 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]'" *DR Partners v. Board of County Comm'rs*, 116 Nev. 616, 623 (2000) (citing *Paisley v. C.I.A.*, 712 F.2d 686, 697 (D.C. Cir. 1983 (quoting 5 U.S.C. § 552(b)(5)) (denying application of deliberative process privilege where a newspaper sought copies of county records pursuant to the Nevada Public Records Act). Defendant has not demonstrated how such a privilege,

mainly asserted in FOIA matters by agency arms of the federal executive branch via Exemption 5, *see e.g., NLRB v. Sears & Roebuck Co.*, 421 U.S. 132 (1975); *EPA v. Mink*, 410 U.S. 73 (1973); *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114 (9th Cir. 1988); *Church of Scientology v. United States Dep't of Army*, 611 F.2d 738 (9th Cir. 1979), is applicable to the facts as presented in the instant matter, *viz.*, memoranda, which are not the subject of a public information claim or request, exchanged between personnel of a county correctional facility. Accordingly, the court addresses only defendant's arguments regarding its claim for protection under the work product doctrine.

The work product doctrine is not a "privilege" *per se*, but protects documents and tangible things that have been prepared by or for a party or his representative in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3). As codified in Rule 26(b)(3), the work product doctrine protects against the disclosure of documents and tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative. . . ." At its core the work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). In determining whether a document has been prepared "in anticipation of litigation," the Ninth Circuit has adopted the "because of" standard as set forth by the Seventh Circuit. *In re Grand Jury Subpoena*, 357 F.3d 900, 909 (9th Cir. 2003). As stated in *In re Grand Jury Subpoena*:

> The "because of" standard 'does not consider whether litigation was primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]' [*United States v.*] *Adlman*, [134 F.3d 1194] at 1195.

357 F.3d at 908.

Thus, despite the general rule that documents prepared in the regular course of business are not protected, a "dual purpose" document may be entitled to work product protection. *6-26 Moore's Federal Practice - Civil* § 26.70. Such documents have been found to be protected when their litigation purpose so "permeates" any non-litigation purpose that the two purposes cannot be discretely separated.

4

*See In re Grand Jury Subpoena*, 357 F.3d at 910 (granting work product protection to reports generated by an environmental consultant who had been hired by the attorney to assist him in preparing a legal defense). The party asserting the work product rule has the burden of establishing, for each document, the rule's application. *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005).

Defendant has not met its burden of showing that each, or any one, of the three memoranda should be protected as work product created in anticipation of litigation. Defendant does not address each memorandum individually. Rather, defendant asserts generally that it retained counsel after the instant action commenced, and that counsel provided his thoughts and opinions on then-current law in the Ninth Circuit with regard to strip searches – a central issue in this litigation. The three memoranda followed as a result of Chief Kirkegard's decision to review the Standard Operating Procedures ("SOP"s) for strip searches *vis a vis* the legal standard as explained by counsel.

Defendant has not addressed to what extent *each* memorandum was created in anticipation of, or "because of," the litigation. Notably, as plaintiff points out, Chief Kirkegard testified that SOPs are reviewed and revised as a regular practice, at least annually. Opp'n (#137) at 5; Exh. 4 to Opp'n. (#137). Lt. Driscoll likewise testified that revising SOPs is a standard and routine practice, and that he corresponded with Sgt. Farside on almost a daily basis. *Id.*; Exh. 3 to Opp'n (#137). Defendant has not addressed whether any of the three memoranda were created as part of LVMPD's regular practice of reviewing and revising SOPs or for some litigation purpose or both. In any event, there is neither evidence nor assertion that these memoranda would not have been prepared in substantially similar form absent the litigation. *See in Re Grand Jury Subpoena*, 357 F.3d at 907-08; *see also Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) (denying work product protection to documents where court concluded that the documents "would have been created in substantially similar form even if no litigation was anticipated"). That there was ongoing litigation or that counsel gave legal advice to certain LVMPD officers does not, in itself, convert memoranda exchanged as part a regular process of revising SOPs into documents created in anticipation of litigation. *See Lewis*, 266 F.R.D. at 440-41. Defendant has not alleged the factual or legal points necessary to meet its burden of showing that each

5

document was so permeated with a litigation purpose that it should be protected as work product created in anticipation of litigation. *See In re Grand Jury Subpoena*, *supra* at 910.

Nor has defendant proved that any individual memorandum contains the mental impressions or opinions of counsel. Defendant generally asserts that inasmuch as all three memoranda were created after and as a direct result of privileged attorney-client communications between litigation counsel and supervisory officials of LVMPD, all three memoranda necessarily reveal the mental impressions, conclusions insights, legal theories and strategies of counsel. Brief (#135) at 8. However, only one of the memoranda – the July 15th memorandum – is even alleged to have been authored by a person after attending a meeting with counsel. Additionally, as discussed further below, none of the documents reference counsel's strategy or even the instant litigation, nor are they addressed to counsel. Rather, each of the three memoranda generally reflect the thoughts and opinions of its author as to his or her understanding of the 2008 *Bull* decision and how to conform the strip search SOP accordingly.

The April 27th memorandum, authored by Sgt. Farside, was written after a meeting between counsel, Chief Kirkegard, and Cpt. Michael See. However, Sgt. Farside did not attend the meeting, nor is the memorandum addressed to either of the two LVMPD officers who did attend the meeting or counsel. Additionally, the substance of the memorandum does not indicate that it was written in response to or "at the behest of" counsel in preparing for this litigation. *See* brief. (#135) at 8. Rather, Sgt. Farside outlines some portions of the strip search policy that may be at odds with the "news on Strip Searches," and makes suggestions for changes. Finally, defendant does not address what, specifically, in the memorandum reflects the thoughts, opinions, and advice of counsel regarding the instant litigation, as opposed to the thoughts and opinions of Sgt. Farside regarding the SOP.

The May 6th memorandum, authored by Lt. Driscoll, is not alleged to have followed or resulted from any specific meeting with counsel. The memorandum appears to be a working draft of a later publicly disseminated memorandum, Change To Strip Search Policy, which was emailed from Chief Kirkegard to all detention services personnel on May 12, 2009. *See* Exh. 5 to Opp'n. (#138). On its face, the substance of the May 6th memorandum reveals Lt. Driscoll's opinions regarding whether and

how the LVMPD's then-current strip search policy was or was not in line with the 2008 *Bull* decision. The document contains Lt. Driscoll's recommended changes to the policy, accompanied by his thoughts about how and why the changes should be made, as well as any changes that have already been made. Nowhere in the memorandum does Lt. Driscoll mention counsel, counsels' opinions or direction, or the instant litigation. Nor has defendant pointed to anything within this document that reveals the thoughts and impressions of counsel regarding this litigation or how Lt. Driscoll's opinions are even reflective of the opinions of counsel.

The July 15th memorandum was authored by Sgt. Farside. It was written two days after a July 13, 2009, meeting between counsel and several officers, including Sgt. Farside. As stated in defendant's privilege log, this document is a "reiteration of changes made to standard operating procedures involving strip searches of inmates." *See* Exh. A to Brief (#135). Again, however, while defendant generally represents that all three memoranda "include information bearing upon the application of advice of counsel to facts developed through an investigation," neither the record nor the *in camera* affidavits of counsel indicate what specifically in this or any other memorandum reflects counsels' thoughts and opinions. The most that can be said on the record made is that counsels' thoughts may be represented as interpreted through the opinions and advice of the memoranda's authors. But Rule 26(b)(3) is not intended to protect such attenuated impressions. Rather, it operates to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Nobles*, 422 U.S. at 238. Defendant has not shown that any of the three memoranda reflect the mental impressions, theories, analysis, or strategies of counsel. *See Hickman v. Taylor*, 329 U.S. 495 (1947).

Accordingly, and for good cause shown,

. . .

. . .

. . .

. . .

7

IT IS ORDERED that plaintiff's Motion to Compel (#87) is GRANTED. Defendant shall, not later than **September 30, 2010**, produce the three memoranda.

Dated this 20th day of September, 2010.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**