# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DAN ROADHOUSE,

    Plaintiff,

v.

LAS VEGAS METROPOLITAN
POLICE DEPARTMENT, et al.,

    Defendants.

2:09-CV-33 JCM (VCF)

## ORDER

Presently before the court is defendant's motion for partial summary judgment on the pleadings. (Doc. # 210). Plaintiff filed a response in opposition (# 213), and defendant filed a reply (doc. # 214).

Also before the court is plaintiff's motion for an order striking the following two documents by defendant: (1) defendant's prior response to the motion for class certification (doc. # 171); and (2) defendant's answer to the amended complaint (doc. # 190).[1] (Doc. # 215). Defendant filed a response in opposition (doc. # 219), and plaintiff has not filed a reply.

---

[1] This motion incorporates by reference plaintiff's previous motions and replies in support of the motion to strike. (*See* docs. ## 186, 188, 189, 193, 197, and 199). The court has considered and reviewed all underlying motions.

**James C. Mahan**
**U.S. District Judge**

Also before the court is plaintiff's motion for class certification. (Doc. # 216).[2] Defendant filed a response in opposition (doc. # 225)[3], and plaintiff filed a reply (doc. # 232).

I.  **Background**

The Las Vegas Metropolitan Police Department operates the Clark County Detention Center ("CCDC"). LVMPD transports all of its arrestees to CCDC to undergo an initial booking process. Some arrestees are released on their own recognizance or make bail. The arrestees released on their own recognizance from CCDC and the arrestees that make bail do not undergo a strip search.

Every arrestee that is not released on their own recognizance or fails to make bail within twenty-four hours is moved to a holding module. Prior to movement to a holding module, an LVMPD officer at CCDC strip searches every single arrestee. Following the strip search, the inmates are required to wear CCDC inmate clothing.

Plaintiff was arrested on misdemeanor charges of reckless driving and admitted to the CCDC. (Doc. # 126, amended compl. at ¶ 40). Plaintiff was strip searched after his admission to the CCDC. (*Id.* at ¶ 41). The strip search entailed a full visual body-cavity examination. (*Id.* at ¶ 41). Plaintiff alleges that "other detainees were able to view [him] while he was in a state of complete undress and while he submitted to the strip search." (*Id.* at ¶ 41).

Plaintiff's complaint alleges violations of the Fourth Amendment to the United States Constitution and Article I, Section 18 of the Nevada Constitution. (*See id.*). Plaintiff alleges that his federal and state constitutional rights were violated because (1) he was strip searched without particularized, reasonable suspicion and (2) he was strip searched in a group in the view of other inmates.

. . .

---

[2] The substantive arguments are contained in plaintiff's memorandum accompanying the motion. (Doc. # 217). Additionally, the memorandum incorporates by reference the previous motions for class certification (*see* docs. ## 163-64, 171, & 184). The court has considered and reviewed the prior motions.

[3] Defendant originally filed a response. (Doc. # 223). Three days later defendant filed the amended response. (Doc. # 225). The court has reviewed both responses.

**James C. Mahan**
**U.S. District Judge**

- 2 -

Based on the foregoing set of facts, plaintiff is attempting to certify two separate classes. The two classes are:

> (1) All detainees of the Clark County Detention Center who, from January 6, 2007, through the present, were strip searched in groups of two or more pursuant to the Las Vegas Metropolitan Police Department's blanket policy/practice/custom (the "group search class"); and
>
> (2) All pre-arraignment detainees of the Clark County Detention Center, who from January 6, 2007, through the present, were strip searched upon admission to the general population of the facility without reasonable suspicion that they were concealing drugs, weapons, or other contraband pursuant to the Las Vegas Metropolitan Department's blanket policy/practice/custom (the "suspicionless strip search class").

(Doc. # 216). Plaintiff argues that putative class members of either or both classes had their Article I, Section 18 rights violated under the Nevada Constitution.[4] Plaintiff argues that members of the group search class also had their federal Fourth Amendment rights violated.[5]

Defendant submits that at all relevant times it had a policy to strip search every inmate at CCDC prior to the inmates' movement to the general jail population, provided that inmate was not released on his own recognizance and did not make bail within twenty four hours. (*See* doc. # 225). LVMPD conducted the strip searches without any particularized, reasonable suspicion for any given inmate. (*See id.*).

. . .

---

[4] Article I, Section 18 of the Nevada Constitution closely mirrors the Fourth Amendment to the United States Constitution. In its entirety, Article I, Section 18 states:

**Unreasonable seizure and search; issuance of warrants.** The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized.

[5] The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

For the group strip searches, plaintiff alleges that defendant had a written policy and/or de facto policy of conducting group strip searches. (*See id.*). Defendant responds that, on days of inprocessing large numbers of inmates, it did conduct group strip searches. (*See id.*) However, in the strip search rooms there are five shower areas that are separated by partitions. (*Id.* at p. 6). The officers, per written policy, would instruct the inmates to go behind the partitions out of view of each other while the strip search was being conducted. (*Id.* at p. 6).

The major outstanding issue in this case is whether class certification is warranted so that a class, or classes, of inmates may collectively pursue any claims they may have against the LVMPD.

**II.   Discussion**

The court stayed the action pending a ruling from the United States Supreme Court (Doc. # 201), and denied the pending motion for class certification as moot. (Doc. # 202). Subsequently, the Supreme Court issued an opinion in *Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington*, 132 S.Ct. 1510 (2012), which had a direct impact on the suspicionless strip search class. The case is no longer stayed.

Plaintiff has re-filed his motion for class certification and the motion is now ripe for this court's review. Each side has their own motion, independent of the class certification motion, that is now ripe for this court's review.

The court will address each of the three motions individually.

   *A.   Judgment on the Pleadings*

In a previous order on a motion to dismiss, this court held that the suspicionless strip search class had no claim under the Fourth Amendment pursuant to *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). (Doc. # 147). This court then granted a stay of the action until the United States Supreme Court issued an opinion on the same issue. Both parties agree that the suspicionless strip search class has no claim under the Fourth Amendment. *See Florence*, 132 S.Ct. 1510 (2012); *Bull*, 595 F.3d 964, 978-79. If plaintiff's rights, or the putative class members' rights, were violated because of a suspicionless search, then those rights must be secured by Article I, Section 18 of the Nevada Constitution.

James C. Mahan
U.S. District Judge

- 4 -

On this motion for judgment on the pleadings, defendant argues that in light of the Supreme Court's decision in *Florence*, "there no longer remains any doubt that the Nevada Supreme Court will not depart from this nationally settled law and interpret the Nevada State Constitution to preclude strip searching pretrial detainees without reasonable suspicion." (Doc. # 210; 7:5-8). Defendant also argues that "[t]here is no reported case from the Nevada Supreme Court, or any other court for that matter, recognizing the existence of a private cause of action for a person deprived of rights secured by the Nevada Constitution." (*Id.* at 9:15-17). Defendant is essentially arguing that (1) plaintiff has no cause of action under the Nevada Constitution and (2) there is no state enabling statute like the federal one–42 U.S.C. § 1983–that permits redress of violations of the state constitution.

Plaintiff argues that defendant is wrong for two reasons. First, this court already allowed a cause of action for a potential violation of Article I, Section 18 of the Nevada Constitution to survive the motion to dismiss stage, and the law of the case doctrine compels the same outcome. Second, *Florence* still permits states to interpret their constitutions in a way that guarantees more rights than the federal constitution. The court will address each argument in turn.

"A judgment on the pleadings is properly granted, when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernest, & Young*, 102 F.3d 390, 392 (9th Cir. 1996); *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (noting that "pre-answer dismissal for failure to state a claim under 12(b)(6) is functionally identical to a post-answer dismissal under Rule 12(c).").

     I.  Nevada Constitution

On the issue of whether a suspicionless strip search violates the Nevada Constitution, the court will not create a new constitutionally protected right. The Nevada Supreme Court has never created a right under Article I, Section 18 to be protected from a suspicionless search before entering a jail population. At this judgment on the pleading stage, this court is unconvinced that the Nevada Supreme Court would create such a right if it were given the opportunity to do so.

. . .

This court permitted a cause of action for a suspicionless strip search to continue past the motion to dismiss stage. (Doc. # 147). This court reasoned that state courts are not necessarily bound by the federal interpretation of individual rights under the federal constitution, and states may expand individual rights of their citizens beyond those provided under the federal constitution. *See State v. Bayard*, 71 P.3d 498, 502 (Nev. 2003).

The Ninth Circuit case *Bull* was published in 2010, while the Supreme Court case *Florence* was published in 2012. Post-*Bull* and pre-*Florence*, there was no right in the Ninth Circuit, protected by the Fourth Amendment, to be free from a suspicionless search after an arrest and before entering the larger jail population. Post-*Florence*, there is no such right under the federal constitution in any court.

It is true that *Florence* says nothing about whether a suspicionless strip search violates the Nevada Constitution. However, Florence held the following about strip searching all inmates before moving them into the general jail population:

> People detained for minor offenses can turn out to be the most devious and dangerous criminals. . . . Reasonable correctional officials could conclude these uncertainties mean they must conduct the same thorough search of everyone who will be admitted to their facilities.
>
> Experience shows that people arrested for minor offenses have tried to smuggle prohibited items into jail, sometimes by using their rectal cavities or genitals for the concealment. They may have some of the same incentives as a serious criminal to hide contraband. A detainee might risk carrying cash, cigarettes, or a penknife to survive in jail. Others may make a quick decision to hide unlawful substances to avoid getting in more trouble at the time of their arrest. . . .
>
> Even if people arrested for a minor offense do not themselves wish to introduce contraband into a jail, they may be coerced into doing so by others. . . . This could happen any time detainees are held in the same area, including a van on the way to the station or in the holding cell of the jail. . . . Exempting people arrested for minor offenses from a standard search protocol thus may put them at greater risk and result in more contraband being brought into the detention facility.

*Florence*, 132 S.Ct. at 1520-21.

At this stage in the case, and in light of the clarifying guidance from *Florence*, this court will not create a right under the Nevada Constitution for an arrestee to be free from a suspicionless search

before entering the larger jail population. Accepting all the allegations in the pleadings as true, *see* Fed.R.Civ.P. 12(c), this court will not allow plaintiff's cause of action for a suspicionless strip search to proceed. The cause of action of action for a violation of Article I, Section 18 of the Nevada Constitution for a suspicionless search is dismissed.[6]

        ii.        Enabling Statute

As to the argument of whether Nevada law has an enabling statute to permit its citizens to seek redress for violations of state constitutional rights, the court need not address the issue since it declines the opportunity to create a new right under the Nevada Constitution.

*B.*    *Motion to Strike*

The court's previous stay mooted two ripe motions filed by plaintiff. Plaintiff now renews those motions. Those two motions are (1) a motion to strike defendant's prior response to the class certification motion and (2) a motion to strike defendant's answer and affirmative defenses. (Docs. ## 186 & 193). The court will address each of the two motions in turn.

        I.        Response and Accompanying Affidavits

Plaintiff moves the court to strike defendant's prior response to the motion for class certification because, according to plaintiff, the affidavits were flawed, untimely, and a sham. Defendant responds by arguing that during the stay, this court permitted plaintiff to conduct a limited discovery to take depositions of the officers that prepared the affidavits attached as exhibits to the opposition to class certification. (*See* doc. # 204). The court also permitted plaintiff a second opportunity to take depositions prior to the refiling of the class certification motion after the stay was lifted. (*See* doc. # 209).

On the issue of whether to strike the defendant's opposition to the prior class certification, the court agrees with the defendant. First, since the motion for and against class certification has

---

[6] The dismissal of this cause of action is without prejudice. Plaintiff may refile this cause of action, if he thinks he has one, in Nevada state courts in the hope that Nevada state courts interpreting Nevada law will create this right. However, this court declines the opportunity to create this right under the Nevada Constitution and will not entertain this cause of action unless the Nevada Supreme Court creates the right.

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  been filed again, striking the prior response by defendant has become a moot issue. To the extent
2  that plaintiff renews the motion to strike and really wants to strike the current opposition, the court
3  finds that plaintiff had adequate opportunities to depose any and all correctional officers that
4  provided an affidavit. The court gave plaintiff a window of January 27, 2012, through August 30,
5  2012, to depose those witnesses. The court can discern no reason to strike either of the responses
6  to the motion to class certification.

        ii.        Strike Answer

8  Next, plaintiff has renewed a motion to strike the defendant's answer to plaintiff's amended
9  complaint pursuant to Rule 12(f). (Doc. # 193). Plaintiff argues that defendant waited
10  approximately fifteen months to file the answer to the amended complaint. (*See id.*).

11  Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any
12  redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally regarded
13  with disfavor. . . ." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F.Supp.2d 1102, 1106 (C.D. Cal.
14  2008). The function of a motion to strike pursuant to Rule 12(f) is avoidance of "the expenditure
15  of time and money that must arise from litigating spurious issues by dispensing with those issues
16  prior to trial [.]" *Fantasy, Inc. v. Fogarty*, 984 F.2d 1524, *rev'd on other grounds*, 510 U.S. 517
17  (1994) (internal quotations omitted).

18  "Given their disfavored status, courts often require a showing of prejudice by the moving
19  party before granting the requested relief." *Id.* (internal citations and quotations omitted). Whether
20  to grant a motion to strike lies within the sound discretion of the district court.

21  It is true that defendant waited fifteen months to file an answer to the amended complaint,
22  which is extremely tardy by any measurement. However, during this fifteen month interval, both
23  parties filed motions, including dispositive ones, that the other contested. Plaintiff was always aware
24  of defendant's answers, theory of the case, or affirmative defenses because of defendant's answer
25  to the first complaint. Plaintiff has not suffered any prejudice because of defendant's extremely late
26  filing of an answer.

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

Additionally, this case is very old.  Both parties are aware of the claims, arguments, theories, and defenses of the other.  The court sees no purpose in unnecessarily further delaying an already old case by striking an answer.

Plaintiff also moves to strike all the affirmative defenses in the answer.  There are thirty asserted affirmative defenses listed in the answer.  Plaintiff makes specific arguments concerning only affirmative defenses three, four, and five.  The court finds it unnecessary to strike any affirmative defenses.

### C. Class Certification for Group Strip Search Class

Plaintiff is attempting to certify the group strip search class under Rule 23(b)(2) and (b)(3). The court will address the certifiability of the putative class under each type of potential class–(b)(2) or (b)(3).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011).  The party seeking class certification "must affirmatively demonstrate his compliance with the rule." *Id.* at 2551.  "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 2551.  The "rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 2551.  The four 23(a) requirements, which are more than just a pleading standard, are numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 2551; Fed.R.Civ.P. 23(a).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), (or (3))." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive.").

James C. Mahan
U.S. District Judge

- 9 -

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 131 S.Ct. at 2557 (emphasis in original). Finally, a Rule 23(b)(2) class "does not authorize class certification when each class member would be entitled to an individualized award of money damages." *Id.*; *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (noting the proposition that "monetary damage requests are generally allowable only if they are merely incidental to the litigation" has been "called into doubt by the Supreme Court") (citing *Dukes*, 131 S.Ct. at 2560).

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites." *Id.* at 615. First, "common questions must 'predominate over any questions affecting only individual members.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting Fed.R.Civ.P. 23(b)(3)). Second, "class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed.R.Civ.P. 23(b)(3)).

Rather than address each potential requirement of Rule 23(a) and (b), and any relevant sub-requirement, the court finds it appropriate to discuss only the factors with which it takes exception.[7] The court finds that the proposed group strip search class is not suitable to certification for the

---

[7] The court's omission of the Rule 23(a) factors is not a concession that plaintiff has properly defined the group search class or that plaintiff has established any or all of the Rule 23(a) factors.

For class definition, plaintiff has defined the group strip search class as any person strip searched at CCDC in a group of two or more. This definition ignores that there were five partitions in the strip searching room at CCDC. Thousands of inmates could have been searched in groups of up to five without being able to see one another during the actual strip search.

For the Rule 23(a) factors, the court is suspect of plaintiff's estimation of 70,000 inmates. The proposed number simply estimates the total number of inmates that were strip searched since 2007. Also, plaintiff attempts to argue he is an adequate representative for classes of inmates whose situations may not be analogous to his own, such as prisoners who may face exhaustion requirements under the PLRA. The adequacy of representation issue could call into typicality problems because the analysis of the (a)(3) and (a)(4) requirement is similar.

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  reasons articulated *infra*.

2        I.      Rule 23(b)(2)

3        The advisory committee notes to Rule 23 state that section (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Dukes* called into question whether a (b)(2) class could be appropriate if anything more than incidental monetary relief is sought. *Dukes*, 131 S.Ct. 2560 (stating that "backpay claims should not be certified under Rule 23(b)(2) at all") ("We need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause.").

      At the time plaintiff was strip searched, a policy existed that prohibited group strip searches. LVMPD has since instituted further safeguards to protect inmate privacy in addition to providing more instruction to CCDC line officers about how to properly, and always, comply with the strip search policy.

      Plaintiff's arguments in support of a (b)(2) class were cursory at best. This is likely because LVMPD already has a policy in place that makes the injunctive relief sought a moot point. Most importantly, however, this class would be most appropriate as a (b)(3) class because the damages sought are far higher than "incidental."

      ii.      Rule 23(b)(3)

      The court finds that the group strip search class is not suitable for class certification because the proposed class cannot meet either the predominance or superiority requirement of Rule 23(b)(3).

      a.      Predominance

      "The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). The predominance analysis of Rule 23(b)(3) is not identical to or synonymous with the commonality analysis in Rule 23(a)(2). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "Even if Rule 23(a)'s

James C. Mahan
U.S. District Judge

- 11 -

commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding." *Amchem*, 521 U.S. 623-24.

Plaintiffs lean heavily on cases in which courts certified group strip search classes. *See, e.g., Lopez v. Youngblood*, 609 F.Supp.2d 1125 (E.D. Cal. 2009). However, in *Lopez* there was a clear and established policy of group strip searching. Additionally, the facility in question in *Lopez* lacked partitions to separate inmates from view of one another during strip searches. Simply, that is not the case here.

The LVMPD Detention Services Division written policy governing strip searches at the time of plaintiff's strip search was Standard Operating Procedure 09.16.00. The policy clearly instructs police officers not to conduct strip searches in a group setting so that detainees may see each other. The policy states:

> During dress-out of inmates who are being moved from the 1st Floor to general population (assigned housing), inmates will be instructed to go behind partitions (the number of inmates strip searched will match the number of available partitions) by a correctional Officer to ensure the privacy interests of inmates.

(Doc. # 225, Ex. C, Standard Operating Procedure; *see also* Ex. A). Defendant has provided several affidavits that lieutenants assigned to booking at the CCDC at all relevant times believed subordinates followed and obeyed the policy. (Doc. # 225, Ex. F). The lieutenants never personally observed a group strip search where the inmates were stripped and searched in view of one another.

There was one officer who provided an affidavit that he violated the policy and would bring in ten inmates at a time to perform the strip search. This was officer James Burt. Burt was assigned to the post involved in conducting dress out procedures in January and February 2008. Of plaintiff's 1,000 inmate sample, Burt would only have been on shift when seven were in-processed. Burt identified two other officers that he believed violated the policy–officers Mark Hopkins and Javier Sanchez. Even assuming that Hopkins and Sanchez conducted group strip searches, Hopkins and Sanchez were assigned to the booking position a total of only two or three times each. A fourth officer, Wilfred Carrero, admitted on his own to occasionally conducting group strip searches.

. . .

1    Plaintiff's proposed class includes females. As per policy, male officers conducted strip
2  searches of male inmates. Conversely, female officers conducted strip searches of female inmates.
3  All the female officers that provided affidavits, approximately eighteen (*see* doc. # 225, ex. N),
4  stated that they never violated the policy of providing a dividing partition if a group strip search was
5  conducted.
6    Additionally, defendant provides the affidavits of at least eleven additional male correctional
7  officers. These eleven male correctional officers conducted the greatest number of strip searches
8  because they were the ones most frequently assigned to the booking position at CCDC at all relevant
9  times. These officers stated they always followed the policy.[8]
10   Simply, there are too many individual questions and (potential) answers that predominate
11 over the common questions and answers. The written policy prohibited group strip searches. A class
12 may only be certified if there was a written policy authorizing group strip searches or deliberate
13 indifference to following the policy of prohibiting group strip searches. However, the vast majority
14 of correctional officers, including those assigned to the position the most, have all testified they
15 complied with the policy. Supervising lieutenants instructed subordinates to follow the written
16 policy and believed the written policy was in fact being followed.
17   In a potential trial for all class members, this court would have to resolve all of the following
18 questions that would be specific or individual to each putative class member: (1) whether the
19 putative class member was even searched in a group; (2) if the putative class member was searched
20 in a group, whether there were more than five other inmates searched together so that there were not
21 enough available partitions; (3) which officer conducted the illegal strip search; (4) whether the
22 officer that conducted the group search conformed to the policy and used the partitions; (5) whether
23 the putative class member was subject to a group strip search in contravention of the policy; (6) if
24 other inmates could see the putative class member during the group strip search; (7) how many other

---

[8] The affidavits cast doubt on plaintiff's assertion that the class size is approximately 70,000–an estimated number of every single person to be strip searched in any manner at CCDC from 2007 to the present.

inmates could see the putative class member during the group strip search; (8) whether the putative class member was incarcerated at the time of the suit, or still incarcerated, and may be subject to exhaustion under the PLRA; (9) whether the offending officer knew of the correct policy; (10) whether the officer that conducted the group strip search contrary to the written policy simply acted rogue and ignored the policy; (11) whether LVMPD properly trained the individual officer in question; (12) whether supervising LVMPD officers should have known, or did in fact know, that some correctional officers were conducting group strip searches in a manner that violated the written policy; (13) whether supervising LVMPD officers should have known, or did in fact know, that the particular correctional officer conducting the particular group strip search in question performed the searches in a manner that violated the written policy; and, (14) whether LVMPD should be liable for each violation of each officer on each separate occasion a group strip search may have occurred contrary to the written policy.

There is not a common nucleus of facts. The facts would vary, perhaps widely, from potential class member to potential class member. Too many individual questions and answers predominate over the common questions and answers.[9]

                b.      Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d 1023 (citing 7A Wright, Miller & Kane, Federal Practice & Procedure § 1779 (2d ed. 1986)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "A class action is the superior method for

---

[9] This court notes that differences in damages amount cannot be the basis for denial of a (b)(3) class. However, the court notes the emotional distress damages of the putative class members in this case could vary widely from class member to class member. This court has already noted that such an individualized inquiry is problematic in the class action context. *Rader v. Teva*, 276 F.R.D. 524, 530-31 (D. Nev. 2011) ("The emotional distress claims of thousands of proposed class members defeat class certification in this case because emotional distress is necessarily an individualized inquiry, and the amount of damages in such cases 'is not susceptible to a mathematical or formulaic calculation.'") (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003)).

James C. Mahan
U.S. District Judge

- 14 -

managing litigation if no realistic alternative exists." *Id.*

"In determining superiority, courts must consider the four factors of Rule 23(b)(3). A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

### 1. Individual Control

The first factor is "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). "Where damages suffered by each putative class member are not large, this factors weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190. Conversely, when damages could be large, this factor weighs against certification. *See id.*

The types of suits with relatively low potential recovery/damages amount are know as negative value suits. In those types of suits, the potential recovery/damages of each individual plaintiff is far outweighed by the costs of litigation.

This case is not a negative value case. The amended complaint is conspicuously silent on the amount of compensatory and punitive damages sought by plaintiff, though plaintiff seeks both types of damages. (*See* doc. # 126).[10] Assuming this case went to trial, and further assuming a jury found in favor of plaintiff, the potential recovery could be in the tens of thousands. Additionally, a punitive damages award could increase the damages amount by several multiples. The potential recovery amount in this case weighs against certification under this factor. *See Zinser*, 253 F.3d at 1190-91 (holding that "a party with a claim of $50,000" weighed against certification under this factor).[11] This factor weighs against certification.

---

[10] The very fact that, in this case, plaintiff is seeking punitive damages signifies that the amount of individual compensatory damages is a high number.

[11] Additionally, the court recognizes the potential damages amount for each class member could vary widely depending on the unique facts of that plaintiff's case and how the group strip searched may have affected their life. The court is aware that this factor alone cannot prevent a class

**James C. Mahan**
**U.S. District Judge**

- 15 -

2. Litigation Already Commenced

The second factor instructs the court to consider "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed.R.Civ.P. 23(b)(3)(B). "This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Zinser*, 253 F.3d at 1191 (quoting Wright & Miller, Federal Practice and Procedure § 1780 (2d ed. 1986)). The court finds this factor to be neutral. There has apparently been no other similarly filed lawsuits. The court need not weigh the concerns of judicial efficiency, multiple lawsuits, and any risk of inconsistent adjudications.

3. Concentration of Litigation in a Particular Forum

The third factors obligates a court to consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Rule 23(b)(3)(C). Plaintiff identified this factor and listed it in his brief, but made no substantive argument as to why this factor would weigh in favor of certification. In any event, this factor is neutral because if any putative class member elected to file a suit it would necessarily have to be in this federal forum.[12]

4. Manageability

The fourth factor requires a court to consider "the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3)(D). "When the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the superior method of adjudication." *Zinser*, 253 F.3d at 1192. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not

---

certification. However, in this case, the damages recovered for each class member could vary widely based on the following non-exhaustive list: (1) if the inmate was group strip searched; (2) how many other inmates were present and could see the putative class member during the strip search; (3) how long the actual search took; (4) whether the class member was group strip searched on multiple occasions; (5) the conduct of the officer that conducted the strip search and if that officer went rogue or just did not know the policy; and (6) the unique mental or emotional effects a group strip search may have had on that class member.

[12] The court recognizes that putative class members could bring a claim in local state courts. However, if any other federal cases existed they would already be in this forum.

James C. Mahan
U.S. District Judge

- 16 -

superior." *Id.*

This is such a case. Every putative class member, except the ones[13] allegedly group strip searched contemporaneously with plaintiff in contravention of the policy, would need to establish his or her unique fact-specific evidence about his or her specific strip search. This would require each putative class member to prove LVMPD should be liable for the actions of the officers at the CCDC on each specific occasion a group strip search occurred in a manner prohibited by the written policy. Simply, if this case were to go to trial as a class action, every single putative class member would have to demonstrate why LVMPD is liable for what occurred at the CCDC in each unique instance a putative class member was group strip searched. This is not a manageable class.

In sum, the court will not certify the putative group strip search class because the putative class cannot meet the predominance and superiority requirements of Rule 23(b)(3).

D.  *Suspicionless Strip Search Class*

Plaintiff also attempts to certify a class of all inmates strip searched without particularized or reasonable suspicion at the CCDC before entering the larger jail population. However, this court will not certify such a putative class because there is no cause of action under federal law for a strip search without reasonable suspicion when entering a jail population. On this very issue, the Supreme Court recently held:

> Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process. The admission of inmates creates numerous risks to facility staff, for the existing detainee population, and for a new detainee himself or herself.

*Florence*, 132 S.Ct. at 1518. "Detecting contraband concealed by new detainees, furthermore, is a most serious responsibility." *Id.* at 1519. Simply, a suspicionless search of every inmate before movement into a jail facility does not violate the Fourth Amendment. *See id.* at 1518-22.

Both parties represent to the court that the Nevada Supreme Court has never decided the issue of whether a suspicionless strip search before admission into a jail population violates Article I,

---

[13] The putative class members group strip searched contemporaneously with plaintiff could be joined to this suit under Rule 19 or Rule 20 making class certification unnecessary.

James C. Mahan
U.S. District Judge

- 17 -

1  Section 18 of the Nevada Constitution.  From this court's independent case research, it does not
2  appear the Nevada Supreme Court has decided the issue.  This court has declined to create this right
3  under the Nevada Constitution.  *See* section II.A *supra*.  Therefore, since plaintiff has no right
4  protected by the Nevada Constitution, a class certification is not warranted.

5  **III.    Conclusion**

6  In conclusion, this court finds it appropriate to deny the renewed judgment on the pleadings.
7  The court finds it appropriate to deny the motion to strike the affidavits, the answer, and the
8  affirmative defenses.  At this stage, this case must proceed forward.  Striking the answer and/or
9  affirmative defenses would only unnecessarily delay resolution of the action.  The court finds no
10 reason to strike the response to class certification or any affidavits since this court permitted
11 discovery during the stay and plaintiff elected not to depose any of the officers that provided
12 affidavits.  Finally, this court, after a rigorous analysis, denies class certification for the reasons
13 stated *supra*.

14 Finally, this case is already almost four years old.  It does not appear on review of the docket
15 that these parties have conducted a settlement conference with a magistrate judge.  The parties are
16 ordered to schedule a settlement conference with Magistrate Judge Ferenbach, the presiding
17 magistrate judge in this case, at the earliest convenience of the parties and Magistrate Judge
18 Ferenbach.

19 Accordingly,

20 IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for
21 partial summary judgment on the pleadings (doc. # 210) be, and the same hereby, is GRANTED.

22 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for
23 order (doc. # 215) be, and the same hereby, is DENIED.

24 . . .
25 . . .
26 . . .
27 . . .
28

**James C. Mahan**
**U.S. District Judge**

- 18 -

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to certify class (doc. # 216) be, and the same hereby, is DENIED.

DATED March 19, 2013.

_____
**UNITED STATES DISTRICT JUDGE**